UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAIRD TECHNOLOGIES, INC., | ) | Case No.: 1:17 CV 1192 |
| Plaintiff | ) | |
| v. | ) | |
| RPC ELECTRONICS, INC., | ) | |
| Defendant | ) | |
| _____ | ) | JUDGE SOLOMON OLIVER, JR. |
| RPC ELECTRONICS, INC., | ) | |
| Third-Party Plaintiff | ) | |
| v. | ) | |
| MK ENTERPRISES, INC., | ) | |
| Third-Party Defendant | ) | ORDER |

Currently pending before the court is Plaintiff Laird Technologies, Inc.'s ("Plaintiff" or "Laird") Motion for Summary Judgment as to Count I of Plaintiff's Complaint and Counts I, II, and III of Defendant RPC Electronics, Inc.'s ("Defendant" or "RPC") Counterclaims ("Motion") (ECF No. 68). For the following reasons, the court grants Plaintiff's Motion.

## I. BACKGROUND

Plaintiff Laird is a global technology company that provides "systems, components and solutions that protect electronics from electromagnetic interference and heat, and that enable connectivity in wireless applications and antennae systems." (Am. Compl. ¶ 1.) Defendant RPC is an electronic manufacturing services company that, among other things, provides its customers with

electronic components. (Counterclaim ¶ 1.) In 2012, Laird and RPC entered into an agreement in which RPC agreed to supply Laird with circuit boards ("Boards") for a thermal electric control unit ("TEC unit"), for which Laird had been contracted to provide to a customer who is not a party to this case. (Am. Compl. ¶ 8; Counterclaim ¶ 11.) As part of this contract, Laird required RPC to build Boards to meet Laird's designs and specifications. (Am. Compl. ¶ 9–12; Counterclaim ¶ 4–5.) One of the specifications included the installation of a 1.2 K resistor at the R40 position on one of the Boards. (Am. Compl. ¶ 18; Mot. at 2; Opp'n at 8.) In or about 2013, RPC switched subcontractors to MK Enterprises, Inc. ("MK"). (Opp'n at 8.) In 2014, after complaints from its customer that the Board at issue was failing, Laird made RPC aware that a 1.5 K ohm resistor was placed at position R40, instead of a 1.2 K ohm resistor as Laird had specified. (Compl. ¶ 3; Opp'n at 8.) After an analysis, Laird "determined that the incorrect resistor value was the cause of the defect." (Am. Compl. ¶ 19.) RPC states that MK failed to install the appropriate resistor. (Opp'n at 8.)

Laird states that it incurred damages as a result of the incorrect resistor, totaling over $335,000. (Am. Compl. ¶ 23.) These include costs in making repairs and replacing the defective parts, lost profits, and consequential and incidental damages. (Am. Compl. ¶ 22.) Laird filed the Complaint in the within case, alleging breach of contract (Count I), breach of warranty (express and implied) (Count II), innocent misrepresentation (Count III), negligent misrepresentation (Count IV), indemnification (Count V), and conversion under statute and common law (Count VI). The case was removed to the federal court on May 9, 2017 (ECF No. 1), and transferred to this court on June 6, 2017. (ECF No. 13.)

On November 21, 2017, RPC filed an Answer to Laird's First Amended Complaint and a Counterclaim against Laird. (ECF No. 40.) In its Counterclaim, RPC states that it conducted research and design work to identify the problem behind the purported Board failure. (Counterclaim ¶ 14.)

This included developing a test fixture to test the Board, developing a cooling bath test fixture, purchasing a power supply to duplicate Laird's in-house testing equipment, repairing the Board, and developing test procedures ("R & D work"). (Counterclaim ¶ 16.) RPC claims that it conducted all R & D work at Laird's request, and alleges that "[b]oth Laird and RPC contemplated and expected that Laird would compensate RPC for its time, material, and expense." (Counterclaim ¶ 14, 18–19.) However, RPC states that it was never compensated for its R & D work. (Counterclaim ¶ 24–25.) In addition, RPC claims that it relied on RPC's promises for future and additional business to its detriment. (Counterclaim ¶ 21.) Specifically, RPC's Counterclaim alleges breach of contract (Count I), *quantum meruit* (Count II), and promissory estoppel (Count II).

On November 14, 2018, Plaintiff filed a Motion for Summary Judgment as to its breach of contract claim (Count I) and Defendant's breach of contract (Count I), *quantum meruit* (Count II), and promissory estoppel (Count III) counterclaims. (ECF No. 68.) Defendant filed its response in opposition on January 14, 2019. (ECF No. 71.) Plaintiff filed its reply on January 28, 2019. (ECF No. 74.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record, or showing that materials cited do not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In most cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment;" it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. LAW & ANALYSIS

#### A. Plaintiff's Breach of Contract Claim (Count I)

Under Ohio law, the elements for breach of contract are the existence of a valid contract, breach by a party in failing to comply with valid contract terms, and damages or loss resulting from

the breach. *See MMK Group, LLC v. SheShells Co., LLC*, 591 F. Supp. 2d 944, 963 (N.D. Ohio 2008); *Claris, Ltd. v. Hotel Development Servs., LLC*, 104 N.E.3d 1076, 1083–84 (Ohio Ct. App. 2018); *see also Miller-Davis Co. v. Ahrens Const., Inc.*, 817 N.W. 2d 609 (Mich. Ct. App. 2012).[1] For a plaintiff to recover more than nominal damages for breach of contract, "a plaintiff must prove that he suffered a loss resulting from the defendant's actions." *Ed Stinn Chevrolet, Inc. v. Nat'l City Bank*, 503 N.E.2d 524, 535 (Ohio 1986) (quoting *Isaac v. Am. Heritage Bank & Trust Co.*, 675 P.2d 742, 745 (Colo. 1984)). Thus, "[d]amages must arise as a result of the breach and must 'naturally and necessarily flow' from the breach of contract." *Johnson v. U.S. Title Agency, Inc.*, 91 N.E.3d 76, 94 (Ohio Ct. App. 2017) (internal citations omitted).

Both parties agree that they entered into a valid contract and that RPC agreed to build and deliver to Laird a Board with a 1.2 K ohm resistor value part at position R40. (Mot. at 2, 8; Opp'n at 8.) It is also undisputed that the Board that RPC delivered to Laird contained a part that had a 1.5 K ohm resistor value at position R40. (Mot. at 8; Opp'n at 8.) Thus, Plaintiff has shown that there is no genuine issue of material fact as to existence of a valid contract, and breach by Defendant.

As a result, Laird argues that it should receive $335,410.31 in damages for repair costs resulting from RPC's breach. (Mot. at 4; Mot. Ex. F, ECF No. 68-7) However, RPC contests the amount, arguing that Laird has not shown that RPC's breach was the reason that the Boards failed. (Opp'n at 4, 13.) Thus, RPC contends that it should not be liable for Laird's alleged damages. First, RPC asserts that a change in the manufacturer of a particular chip on the Board (the "LM317LM

---

[1] Plaintiff is a corporation that does business in Michigan. (Am. Compl. ¶ 1.) Defendant is a corporation whose principal place of business is in Ohio. (Am. Compl. ¶ 2; Answer ¶ 2.) Although the parties do not specify where the contract was executed, neither raise a choice-of-law issue. Since both Plaintiff and Defendant cite to Ohio law, the court will rely on Ohio law. In any case, the court does not note any material differences between Ohio law and Michigan law with respect to the issues raised in regard to Plaintiff's Motion.

chip") caused the Board to fail partway during production of the Board. (Opp'n at 10.) RPC states that it notified Laird, and RPC and MK replaced the chip on the Board, dedicating substantial time and resources to design and implement a separate test fixture to screen the specific chips until the Board tested properly. (Opp'n at 10–11.) <u>As evidence that the chip caused the Board to fail, RPC cites a Corrective Action Report issued by Laird on October 6, 2015 ("CAR-18784"), which states that the Board failed an inspection because the Board "design did not account for component tolerances, including IC 2 (LM317LM)," and that the corrective action required was to replace the LM317LM chip.</u> (Opp'n Ex. 4, ECF No. 72-4.) [FILED UNDER SEAL] Second, RPC argues that Laird's failure to consider the overall effect of the "thermistor," a resistor that varies its resistance based on temperature, also contributed to Board failure. (Opp'n at 12.) RPC states that Laird required it to place a thermistor on the Board at issue. (*Id*. at 11.) RPC also notes that connecting the Board to the thermistor changed the overall voltage of the Board and altered the temperatures that the Board would enter into during heating and cooling modes. (*Id*. at 12.) RPC asserts that Laird failed to consider this temperature change when designing the Board, and this caused the Board to function improperly. (*Id*.) Third, RPC maintains that Laird's quality control testing methods, which Laird required RPC to use, were flawed. (*Id*. at 7, 12.) According to RPC, Laird never ran performance tests on the assembled TEC units, comprised of the Boards that RPC manufactured for Laird, to determine the actual temperature values when the TEC unit entered into a heating mode or cooling mode. (*Id*.) As a result, it did not identify until after RPC had delivered the Board to Laird that the design of the Board had not properly taken into account the temperature effect of thermistor on the functioning of the Board. (*Id*.) <u>In support of its assertion that Laird's flawed design and testing of the Board contributed to Board failure, RPC cites to Laird's Corrective Action Report from November 21, 2014 ("CAR-11775"), which states that although the "approved testing verified that</u>

-6-

the unit adequately switched from heating to cool," a "root cause" of the Board's issues was that the test "did not determine actual switch point temperature values for heating and cooling." (Opp'n Ex. 1, ECF No. 72-1.) [FILED UNDER SEAL] In addition, RPC argues that the Board passed the test fixture supplied by Laird, and was shipped per Laird's instruction. (*Id*. at 16.) Thus, RPC maintains that the Board was functioning properly per Plaintiff's specifications when it was delivered to Plaintiff.

Plaintiff's Reply does not challenge these alternative explanations for Board failure. Instead Laird emphasizes that Defendant's breach caused the Board's failure. For instance, Laird argues by deduction that it did not experience problems with any Boards from RPC until RPC switched subcontractors to MK, which began placing incorrect 1.5 K ohm resistors at position R40. (Reply at 1.) Laird also refers to its Corrective Action Report from January 12, 2015 ("CAR-148007"), which states that the "root cause" of the issue with the Board was that the "feeder was loaded with incorrect resistor value of 1.5 K."[2] (Mot. Ex. E, ECF No. 69-1.) [FILED UNDER SEAL] Similarly, CAR-11775, which RPC cited for the proposition that Laird improperly designed and tested the Board, also lists the incorrect resistor as another one of the "root causes" of the Board's malfunctioning. (Opp'n Ex. 1, ECF No. 72-1.) [FILED UNDER SEAL]. Finally, Laird points to the settlement agreement between Laird and the customer to which it sold the TEC units as evidence that the incorrect resistor caused the Board to fail. The agreement is built around "claims related to the use of an incorrect value resistor R40." (Reply Ex. 1. ECF No. 75.) [FILED UNDER SEAL] Thus, Laird argues that the settlement agreement shows that Laird and its customer concluded that the issue

---

[2] The court notes that the "problem description" on CAR-148007 states that "Laird identified resistor R40 to be a 1.5 K value but should have been a 1.2 K value." (Mot. Ex. E, ECF No 69-1.) [FILED UNDER SEAL] Thus, it is unclear whether CAR-148007 was written narrowly in response to Laird's admission, or if it was a report on the causes of Board failure generally. [FILED UNDER SEAL]

with the Board was caused by the incorrect resistor. (Reply at 4.)

The court finds that Plaintiff has presented sufficient evidence to show that there is no genuine dispute of material fact that Defendant's breach, by way of installing the incorrect value resistor, contributed to the Board's failure. Accordingly, Defendant has shown that it suffered damages resulting from Plaintiff's breach. However, Defendant has also presented evidence to show that there is an issue of material fact as to whether the LM317LM chip, or the Board design with respect to the thermistor, also contributed to the Board's failure. Consequently, there remains a genuine dispute of material fact as to how much Defendant's breach contributed to Plaintiff's damages. Thus, the court grants Plaintiff summary judgment on its breach of contract claim (Count I), but reserves judgment on the question of the damages amount.

### B. Defendant's Breach of Contract Counterclaim (Count I)

RPC claims that Laird breached a contract in failing to compensate RPC for its work in rectifying the issue with the wrong resistor. RPC argues that it created "two new screening processes at considerable expense to screen out defective LM317LM chips, and to screen thermistors." (Opp'n at 17.) Laird argues that Plaintiff has failed to provide any facts or documents to support its claim. (Mot. at 9.) Therefore, Laird contends that there is no genuine issue of material fact for trial.

The court agrees that Plaintiff has cited no evidence that RPC conducted work pursuant to a contract. RPC correctly states that there was a valid contract between Laird and RPC. (Counterclaim ¶ 27.) It also states that it "agreed to conduct R & D work, and the parties understood that Laird was to reimburse RPC for the costs incurred." (*Id*. ¶ 28.) However, RPC's Brief in Opposition does not provide any evidence that the parties came to an agreement that RPC would be reimbursed for the costs associated with its R & D work. Thus, the court finds Laird has shown that there is no dispute of material fact with respect to RPC's breach of contract counterclaim (Count

I) and grants summary judgment to Laird.

**C. Defendant's *Quantum Meruit* and Promissory Estoppel Counterclaims (Counts II and III)**

RPC also raises *quantum meruit* and promissory estoppel counterclaims. *Quantum meruit* is based on an equitable doctrine that "requires a defendant to pay a plaintiff the reasonable value of services performed for the defendant even though there was no contract to do so." *United States v. Snider*, 779, F.2d 1151, 1159 (6th Cir. 1985). As the Sixth Circuit has determined, "[t]he theory underlying *quantum meruit* is that the law implies a contract when one person benefits from another person's act." *Id*. Similarly, promissory estoppel is an equitable claim, which requires "[a] promise which the promisor should reasonbly expect to induce action or forbearance on the part of the promissee." *McCroskey v. State*, 456 N.E.2d 1204, 1205 (Ohio 1973).

Laird again raises the argument that RPC has failed to provide any facts or documents to support it s claims. (Mot. at 9.) It also points to an email exchange between RPC and Laird employees, in which an RPC representative promises Laird that RPC "will upgrade the Laird supplied test fixture at our expense so that the test will be able to determine whether the correct values are placed for all the parts. . . ." (Mot. Ex. I, ECF No. 68-10.) As discussed with respect to RPC's breach of contract claim, RPC asserts that it relied on Laird's promises of compensation to its detriment. RPC also argues that it conducted its R & D work because "Laird promised future and additional business." (Counterclaim ¶ 21.) Finally, in response to email exchange, RPC states that Laird presented the evidence out of context. (Opp'n at 16–17.) RPC maintains that, in any case, one statement does not indicate that RPC was willing to forgo any and all claims for compensation for its R & D work.

RPC has not presented any evidence to support that Laird made these promises, or that RPC

relied on them. Nor has RPC supported its arguments with respect to the email exchange with any facts. Thus, the court finds that Plaintiff has shown that there is no dispute of material fact with respect to RPC's *quantum meruit* and promissory estoppel counterclaims (Counts II and III). Accordingly, the court grants summary judgment to Laird on those counterclaims.

## IV. CONCLUSION

For the foregoing reasons, the court grants Plaintiff's Motion for Summary Judgment with respect to Plaintiff's breach of contract claim (Count I) and Defendant's counterclaims for breach of contract (Count I), *quantum meruit* (Count II), and promissory estoppel (Count III) (ECF No.68.)

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

April 23, 2019